## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHWESTERN DIVISION

| | | |
|---|---|---|
| KERRY D. GILBERT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 5:17-cv-521-LCB |
| | ) | |
| SOCIAL SECURITY | ) | |
| ADMINISTRATION, the | ) | |
| Commissioner, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court is the complaint of plaintiff Kerry D. Gilbert.  In his complaint, plaintiff seeks judicial review of an adverse final decision of the Commissioner of the Social Security Administration ("the Commissioner") pursuant to 42 U.S.C. § 405(g).  The Court has reviewed the pertinent record and the parties' briefs.[1]

It is the duty of the Court to review the decision of the ALJ and not re-weigh the evidence or substitute its decision for the ALJ's.  In particular, the Court must affirm the ALJ's decision if it is supported by substantial evidence even if there is

---

[1] The Court notes that on March 22, 2019, plaintiff filed a motion to extend his deadline to file a brief.  (Doc. 12).  The Court granted that motion, extending the deadline to March 31, 2019.  (Doc. 13).  Plaintiff did not file his brief on March 31.  The Commissioner then filed a brief on April 26, 2019.  Plaintiff did not file his brief until May 11, 2019.  On May 23, 2019, the Commissioner filed a response to the specific arguments raised in plaintiff's brief.  Although plaintiff's brief was untimely filed, the Court will nonetheless address the arguments raised in same.

evidence that supports the opposite conclusion. The Court must also determine whether the ALJ applied the correct legal standards.

To provide context for plaintiff's arguments and the procedural history of this action, the Court briefly recounts a portion of plaintiff's medical history. On September 5, 2013, a needle biopsy of a pancreatic mass indicated that plaintiff had follicular lymphoma. (R. 480-84). Plaintiff then underwent six cycles of chemotherapy that ended on January 10, 2014. (*Id*. at 731). An electromyographic study on June 23, 2014, of the upper and lower extremities was abnormal and showed evidence for a sensory and motor primarily axon loss polyneuropathy, common after chemotherapy. (*Id*. at 546-48). A CT scan performed on October 24, 2014, showed continued presence of the pancreatic head mass with an interval decrease in size with no evidence of recurrence. (*Id*. at 614, 617). On March 3, 2015, during a consulting visit with a neurologist, plaintiff reported painful neuropathy and other symptoms. (*Id*. at 670-71). Additionally, the neurologic examination demonstrated deficits referable to peripheral motor and sensory nerves. (*Id*.). The neurologist recommended a change in medication and a follow-up appointment. (*Id*.).

However, on August 4, 2015, plaintiff had a PET scan that showed peripancreatic and hepatic hilar masses that were intensely FFDG avid and of concern for recurrent lymphoma. (*Id*. at 691). A needle biopsy of the pancreatic

head on September 21, 2015, was consistent with follicular lymphoma. (*Id*. at 695). Plaintiff then underwent weekly Rituxan chemotherapy that ended on October 27, 2015, and began maintenance Rituxan therapy beginning on November 25, 2015. (*Id*. at 731).

Plaintiff filed an application for a period of disability insurance benefits ("DIB") and supplemental social security income ("SSI") benefits on August 22, 2013, alleging disability beginning on August 19, 2013. (R. 290, 294). Administrative Law Judge ("ALJ") Mallette Richey held a hearing on April 2, 2015, and issued an unfavorable decision on July 14, 2015, finding that plaintiff was not disabled. (*Id*. at 158-72). Plaintiff's claim was then re-opened to consider new evidence and another ALJ, Tresie Kinnell, held a hearing on December 2, 2015. (*Id*. at 51). That ALJ issued another unfavorable decision on February 5, 2016, finding that plaintiff was not disabled. (*Id*. at 40).

Plaintiff appealed that decision to the Appeals Council. On September 26, 2016, the Appeals Council rendered a partially favorable decision to plaintiff. (*Id*. at 177-83, 276-80). Specifically, the Appeals Council found that plaintiff was disabled as of August 4, 2015, because he met Listing 13.05(A)(1) due to a recurrence of lymphoma. (*Id*. at 278). The Appeals Council specifically stated that it considered "additional evidence that [plaintiff] submitted after the hearing decision was issued." (*Id*.). The Appeals Council later reopened its September 26,

2016, decision because of a clerical error: the record showed that plaintiff was insured for DIB only through December 31, 2014, but did not become disabled until August 4, 2015. (*Id*. at 285-89).

Consequently, the Appeals Council amended its decision and issued two notices to plaintiff, one to address his application for SSI and one to address his application for DIB. (Doc. 1-4, 7-14). With respect to the DIB claim, on February 3, 2017, the Appeals Council denied plaintiff's request for review because, although it had determined that plaintiff was disabled as of August 4, 2015, his DIB coverage had expired on December 31, 2014. (*Id*. at 11). With respect to the SSI claim, on February 1, 2017, the Appeals Council vacated the ALJ's decision with respect to whether plaintiff met a listing due to his lymphoma diagnosis. (*Id*. at 11-13). Relying on the opinion of Dr. Gerald Bell, M.D., the Appeals Council concluded that plaintiff met Listing 13.05(A)(1) and was disabled as of August 4, 2015, but not before that date, for purposes of SSI. (*Id*. at 11-13, 281-83). Plaintiff then filed this action.

Plaintiff contends that the record reflects two errors. First, plaintiff asserts that the Appeals Council failed to articulate good cause for ignoring the opinions of Dr. Scott Morgan, his treating oncologist. Second, plaintiff asserts that the ALJ erred in assessing the credibility of plaintiff's subjective complaints of pain due to neuropathy. Plaintiff requests that the Court remand this action with instructions to

award benefits since September 5, 2013, or, alternately, reconsider, among other things, whether plaintiff met Listing 13.05 and when. The Court will address each of plaintiff's contentions in turn.

### A.     Opinions of Treating Physician Dr. Scott Morgan

Plaintiff argues that the Appeals Council failed to articulate good cause for ignoring the April 6, 2016, opinion of treating physician, Dr. Morgan. Plaintiff argues that, although it was in the record, the Appeals Council failed discuss the opinions of Dr. Morgan contained in his April 7, 2016, sworn statement; plaintiff also argues that the Appeals Council failed to address Dr. Morgan's November 25, 2015, letter regarding his functional status. In short, it appears that plaintiff argues that the Appeals Council should have adopted Dr. Morgan's conclusion in the April 7, 2016, sworn statement that plaintiff met Listing 13.05(A)(2)[2] as of September 5, 2013, the date of the first needle biopsy. The Court will address the November 2015 letter first.

In an open letter dated November 25, 2015, Dr. Morgan stated that plaintiff was under his care for follicular lymphoma, and that plaintiff was treated with chemotherapy that ended in January 2014. (*Id.* at 703). Dr. Morgan also noted that plaintiff had the side effects of neuropathy, chronic weakness, and fatigue; that

---

[2] Although the Appeals Council determined that plaintiff met Listing 13.05(A)(1), Dr. Morgan testified that he believed that plaintiff had met Listing 13.05(A)(2). Plaintiff does not discuss this discrepancy at all, including whether any record evidence supports Dr. Morgan's opinion.

he was currently taking medications to treat his neuropathy, but continued to have significant pain in his lower extremities; and that these side effects interfered with his daily living, although Dr. Morgan provided no specific examples. (*Id*.). Dr. Morgan also noted that plaintiff was being treated with Rituximab every two months as a maintenance treatment. (*Id*.). Notably, Dr. Morgan did not describe any specific work-related limitations.

Plaintiff appears to take issue with the Appeals Council not directly addressing the November letter when reviewing the ALJ's February 5, 2016, decision. However, the Court notes that the ALJ did address Dr. Morgan's letter in her February 5, 2016, decision, giving it "good weight." (*Id*. at 38). In fact, the ALJ found that Dr. Morgan's assessment in the November letter was consistent with the record evidence that showed plaintiff's impairments, including some pain for neuropathy, do cause some interference with his daily living, but that the evidence did not show that the interference is debilitating. (*Id*.). The Court finds that the ALJ did not commit error in this assessment. The ALJ considered the November letter and assigned it substantial weight, as she was required to do. *See Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004) ("The opinion of a treating physician, such as Dr. Schatten, "must be given substantial or considerable weight unless 'good cause' is shown to the contrary.") (citation omitted). Furthermore, the ALJ examined the record evidence regarding plaintiff's

complaints of neuropathy, but determined that, while some limitations were warranted, the pain was not wholly disabling. The fact that the Appeals Council did not expressly mention the November letter – a letter that was already assigned good weight by the ALJ – was not error either. The Appeals Council stated that it had considered the written record that was before the ALJ, which included the November 25 letter. The record also shows that Dr. Bell, who evaluated the evidence at the request of the Appeals Council in May 2016, specifically considered the November 25 letter. (R. 277, 282). Thus, the Court finds no reversible error in this regard.

The crux of plaintiff's argument appears to be that the Appeals Council failed to discuss the April 7, 2016, sworn statement of Dr. Morgan in its decision. (R. 747-72). In his sworn statement, Dr. Morgan stated, among other things that, he diagnosed plaintiff with indolent follicular lymphoma in August 2013. (*Id*. at 756). Dr. Morgan noted that the medication taken by plaintiff could cause side effects such as neuropathy and that, in plaintiff's case, it exacerbated his neuropathy. (*Id*. at 760-61). Dr. Morgan confirmed that plaintiff saw a neurologist in June 2014 who conducted studies that showed polyneuropathy. (*Id*. at 762). Dr. Morgan explained that, when he indicated in this records that plaintiff's pain was controlled, he meant that plaintiff was able to tolerate the amount of problems that he had with medications. (*Id*. at 765). Additionally, Dr. Morgan opined that

plaintiff was not able to work from August or September 2013 to the present. (*Id.* at 766-67). More specifically, Dr. Morgan opined that plaintiff could not have worked during his chemotherapy treatments because of acute side effects and that he could not work long-term due to the side effects of neuropathy. (*Id.* at 767). Dr. Morgan noted that in March 2016, plaintiff was still having neuropathy that was fairly well controlled. (*Id.* at 767-68). Finally, Dr. Morgan opined that plaintiff met Listing 13.05(A)(2) as of September 5, 2013, when he had the first needle biopsy. (*Id.* at 770).

The Court finds no reversible error. First, the Court notes that Dr. Morgan's sworn statement was included in the supplemental list of exhibits attached to the Appeals Council's February 1, 2017, decision. (*Id.* at 11, 15). The Appeals Council also stated that it had considered all evidence submitted after the ALJ's February 5, 2016, decision; the sworn statement was given by Dr. Morgan in April 2016, and submitted thereafter. (*Id.* at 277). Thus, it is clear the Appeals Council did consider Dr. Morgan's sworn statement.

Second, Dr. Morgan renders opinions on issues reserved for the Commissioner. For example, Dr. Morgan opines that plaintiff could not have worked (*i.e.*, was disabled) from August or September 2013 to the present. However, opinions on issues such as whether a claimant is disabled or able to work or meets a listing are reserved to the Commissioner; a treating source's opinion on

these issues are not entitled to controlling weight. *See Lee v. Comm'r, Soc. Sec. Admin.*, 551 F. App'x 539, 542 (11th Cir. 2014) ("Although opinions from medical sources as to whether a claimant is disabled or whether a claimant meets a listing requirement are considered, these decisions are ultimately reserved to the Commissioner."). Moreover, a claimant has the burden of providing that an impairment meets or equals a listed impairment. (*Id.*). In his brief, plaintiff makes no argument regarding, and points to no evidence indicating, why he met Listing 13.05(A)(2), as Dr. Morgan opines, before August 4, 2015.

Finally, to the extent that the Appeals Council's failure to assign weight to the statement of Dr. Morgan was error, any such error was harmless. Dr. Morgan's opinions do not affect the ALJ's conclusion, at least to the extent the ALJ concluded that from plaintiff was not disabled from the alleged onset date up until August 3, 2015. As the ALJ acknowledged, plaintiff did experience neuropathy as a side effect from medication; however, the ALJ found that, while some limitations were warranted, plaintiff's pain was not entirely disabling. Furthermore, while the record shows that during plaintiff's initial chemotherapy treatment from September 2013 to January 2014 he was limited in activities, his treatment was effective and his neuropathy did not cause disabling limitations for any consecutive twelve-month period before August 4, 2015. Consequently, the Court concludes that the Appeals Council committed, at most, harmless error in failing to discuss or assign

weight to the sworn statement of Dr. Morgan.

## B.    The ALJ's Credibility Determination

Plaintiff argues that the ALJ failed to appropriately address his complaints of pain.   In particular, plaintiff argues that the ALJ erred in discrediting his allegations of disability due to neuropathy.  The Court notes that its job at this juncture is to determine whether the ALJ's determination is supported by substantial evidence, even if there is evidence to support a different conclusion. Here, the ALJ did, in fact, consider plaintiff's complaints of pain due to neuropathy.  Indeed, the ALJ noted record medical evidence indicating that plaintiff had neuropathy, but found that it did not support plaintiff's allegations of severe and chronic limitations of function to the degree that it would preclude performance of *all* substantial gainful activity.  For example, the first treatment of lymphoma via chemotherapy from September 2013 to January 2014 achieved the desired effect and that overall there was improvement of the lymphoma with chemotherapy and medications.  Additionally, the ALJ noted that plaintiff had reported good or improved control of his pain with medication, that he plays in a band twice a month, and continues to drive. *See Ingram v. Colvin*, No. 2:13-CV-01444-LSC, 2014 WL 5090724, at *6 (N.D. Ala. Oct. 9, 2014) ("Although not dispositive, a plaintiff's activities may show that her condition is not as limiting as she alleged.").  A note from the electromyographic study conducted on June 23,

2014, indicated that plaintiff was being assessed for neuropathy and had tingling in his toes and fingertips and "minimal pain." (R. 546). And while a note from plaintiff's visit with a neurologist on March 3, 2015, indicated that plaintiff reported painful neuropathy and other symptoms, no functional limitations were mandated, only a change in medication and a follow up visit. (*Id*. at 671). Consequently, the Court finds that there was substantial evidence for the ALJ's credibility determination.

Accordingly,

IT IS ORDERED that the decision of the Commissioner is AFFIRMED.

A final judgment will be entered separately.


**DONE** and **ORDERED** this October 28, 2019.

_____
**LILES C. BURKE**
UNITED STATES DISTRICT JUDGE